**OFFICE OF HAWAI'IAN AFFAIRS,
et al., Plaintiffs,**

v.

**DEPARTMENT OF EDUCATION,
et al., Defendants.**

Civ. No. 96–00030 ACK.

United States District Court,
D. Hawai'i.

Oct. 23, 1996.

Sherry P. Broder, Honolulu, for plaintiffs.

Steven S. Michaels, Office of Attorney General, State of Hawai'i, Honolulu, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGEMENT ON THE PLEADINGS AND REMANDING STATE CLAIMS

KAY, Chief Judge.

### OVERVIEW

The Court IN PART GRANTS and IN PART DENIES Defendants' motion for judgement on the pleadings. First, the Court finds that the claims against the Department of Education ("DOE") and Board of Education ("BOE"), state agencies, are barred by the Eleventh Amendment. Under *Kruse v. State of Hawaii*, 68 F.3d 331, 334 (9th Cir.1995), the claims against these defendants which are based on 42 U.S.C. § 1983 are dismissed and all remaining claims against these defendants are remanded to state court. Similarly, as to the claims against the state officials in their official capacities, the constitutional claims brought under § 1983 are barred by the Eleventh Amendment because the relief which Plaintiffs seek is retrospective, not prospective. Therefore these officials are similarly state actors and thus not "persons" under § 1983, and accordingly the Court dismisses these claims. In contrast the claims under the Native American Languages Act ("NALA") against the state officials are not barred by the Eleventh Amendment. However the Court enters judgement in favor of Defendants on these claims because NALA provides neither a direct private cause of action nor enforceable rights to sue under 42 U.S.C. § 1983. Last, Plaintiffs' state law claims are also barred by the Eleventh Amendment and hence these claims are remanded to state court.

### BACKGROUND

On November 27, 1995, the Office of Hawaiian Affairs ("OHA"), the Chairman of OHA, and the individual Trustees of OHA, (collectively "Plaintiffs"), filed suit in the Circuit Court of the First Circuit of the State of Hawaii against the State of Hawaii Department of Education ("DOE") and Board of Education ("BOE"), and, in their official capacities, the Superintendent of the DOE, the Chairman of the BOE, and the members of the BOE, (collectively "Defendants"). On January 16, 1996, Defendants removed this case to federal court on the basis of federal question jurisdiction.

In the complaint, Plaintiffs contend that Defendants' failure to provide sufficient Hawaiian language in Hawaii's public schools violate various state and federal laws. The crux of Plaintiffs' complaint is that the State of Hawaii should provide more Hawaiian language immersion programs in public schools. Although there are immersion programs currently in place, Plaintiffs contend that these programs do not meet the growing need by Hawaiian students for these programs. For these reasons Plaintiffs assert that Defendants violate state law under (1) Article X, § 4 of the Hawaii State Constitution, by failing "to provide a comprehensive Hawaiian education program" and failing to encourage "community expertise" to develop Hawaiian-language programs and teachers; and (2) Hawaii Revised Statute 1-1, by failing to protect the "customary rights" of Hawaiians to use their Hawaiian language. In addition Plaintiffs assert that Defendants violate federal law under (1) the Native American Languages Act of 1990 and (2) the First and Fourteenth Amendments.

To remedy these alleged violations Plaintiffs seek injunctive and declaratory relief, although the complaint does not specify what

declaratory relief they seek. As to the injunctive relief sought, Plaintiffs request the Court to require Defendants to provide sufficient resources (teachers, classrooms, and learning materials) for Hawaiian immersion programs in public schools, to devise a plan to expand Hawaiian language programs and make them accessible, and to develop a pool of teachers for Hawaiian language immersion education.

After Defendants removed this case to federal court, Defendants filed the instant motion for partial judgement on the pleadings. In this motion Defendants request partial judgement on the federal claims and request the Court to remand the state law claims to state court.

The motion came before this Court for hearing on September 9, 1996. At the hearing the parties requested, and were granted, permission for additional briefing on the applicability of the Eleventh Amendment to this case. Thereafter on September 12, 1996 the parties submitted supplemental memoranda on this issue.

## STANDARD OF REVIEW

Judgement on the pleadings, pursuant to Federal Rules of Civil Procedure 12(c), is proper when the moving party clearly establishes on the face of the pleadings that (1) no material issue of fact remains to be resolved; and (2) it is entitled to judgment as a matter of law. *Doleman v. Meiji Mut. Life Ins. Co.,* 727 F.2d 1480, 1482 (9th Cir.1984).

In reviewing a defendant's motion under Rule 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiffs' allegations. *Hoeft v. Tucson Unified School Dist.,* 967 F.2d 1298, 1301 (9th Cir.1992); *Hal Roach Studios v. Richard Feiner and Co.,* 896 F.2d 1542, 1550 (9th Cir.1990).

Where the district court goes beyond the pleadings to resolve an issue, the motion properly is treated as one for summary judgement. Fed.R.Civ.P. 12(c); *Hal Roach Studios,* 896 F.2d at 1550 (9th Cir.1990).

## DISCUSSION

Defendants assert that the Court should grant them partial judgement on the federal claims and should remand the state law issues to state court. Defendants first ask the Court to remand the state claims brought under the Hawaii State Constitution and Hawaii Revised Statutes. On the federal law claims, Defendants argue that Plaintiffs have no claim under NALA because (1) the Act provides no private right of action and (2) the Act provides no enforceable rights which entitle Plaintiffs to sue under § 1983. Defendants also argue that Plaintiffs' claims under the First and Fourteenth Amendments to the federal constitution likewise fail. According to Defendants these claims are based on past discrimination against native Hawaiians and thus (1) are barred by the statute of limitations and (2) do not constitute a present federal constitutional violation.

In opposition, Plaintiffs first assert that Defendants waived their Eleventh Amendment immunity because they removed this case to federal court. Second, Plaintiffs claim that their federal and state claims should be addressed together in the same court because their claim under the Native American Languages Act must be analyzed in relation to the obligations in the Hawaii State Constitution which pertains to native Hawaiians. Substantively, Plaintiffs argue that the Native American Languages Act creates an implied cause of action and that this statute should be construed in favor of the Native Hawaiians. Plaintiffs also argue that the statute of limitations does not bar their federal constitutional claims because they allege a present constitutional violation of the State's continuing duty to eradicate the effects of past invidious discrimination. Last, Plaintiffs assert that the Court should deny Defendants' motion because Defendants have allegedly refused to comply with discovery requests. The Court will not address the discovery issue because the issues presented in this motion for judgement on the pleadings can in fact be resolved on the pleadings alone.

### I. *Removal Jurisdiction*

The Court first addresses, *sua sponte,* its removal jurisdiction over this action under 28 U.S.C. § 1441.

## A. *Legal Standard*

28 U.S.C. § 1441 authorizes cases to be removed from state court to federal court in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Moreover in regard to cases involving federal questions, § 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable ..."

■ Removal of a case from state to federal court is a question of federal subject matter jurisdiction and therefore the burden of establishing federal jurisdiction falls on the party invoking removal. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921)). The Court may *sua sponte* address jurisdictional bars to removal, even if the plaintiff does not contest removal jurisdiction. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). *See also Baskin–Robbins v. No Ka Oi Ice Cream,* CV 93–00126 ACK, order filed December 3, 1993 (jurisdiction requirements under removal statute cannot be waived by failure to raise). Thus even if the plaintiff fails to file a motion for remand, the court can raise this jurisdictional issue *sua sponte.* The court must remand the case to state court if it finds that the case lacks federal subject matter jurisdiction.

## B. *Application*

### 1. *The Eleventh Amendment Jurisdictional Bar to Removal*

In the case at bar Defendants removed this case to federal court on January 16, 1996. In their Notice of Removal Defendants asserted that the case could be removed to federal court because the Court had original jurisdiction over the action on the basis of federal question jurisdiction, given that the complaint alleged that Defendants violated the federal Native American Languages Act and the First and Fourteenth amendments to the federal constitution. Defendants now assert that some of Plaintiffs' claims are barred by the Eleventh Amendment. Defendants specifically reserved this issue in the Notice of Removal, thereby preserving it.

■ Some circuits hold that because the Eleventh Amendment is a jurisdictional bar, if one of the claims is barred by the Eleventh Amendment then the suit cannot be removed to federal court in whole or in part. *See Frances v. Wright,* 19 F.3d 337 (7th Cir.1994) (finding no removal jurisdiction because Eleventh Amendment barred claims against state defendants). However the Ninth Circuit rejects those holdings; the fact that one of the claims may be barred by Eleventh Amendment does not bar the remaining claims from being removed to federal court. *Kruse v. State of Hawaii,* 68 F.3d 331 (9th Cir.1995).

■ When removed claims are barred by the Eleventh Amendment, the Ninth Circuit approves of the procedure of remanding those particular claims to state court. *Gamboa v. Rubin,* 80 F.3d 1338 (9th Cir.1996) (remanding removed Medicaid claims barred by Eleventh Amendment). However in cases involving claims under 42 U.S.C. § 1983, the Ninth Circuit has indicated that it is proper to dismiss those claims which are barred by the Eleventh Amendment rather than to remand them to state court. *Kruse v. State of Hawaii,* 68 F.3d 331, 334 (9th Cir.1995). The rationale in such cases is that states and state officials who are entitled to Eleventh Amendment immunity are state actors and hence not "persons" as defined by § 1983. *See Will v. Michigan,* 491 U.S. 58, 70–72, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Thus § 1983 claims against these defendants could not be brought in either federal or state court, thereby making it proper to dismiss rather than remand such claims. *Kruse,* 68 F.3d at 334 n. 2; *see also* opin. below, 857 F.Supp. 741, 754 (D.Haw.1994). However state officials subject to the "prospective injunctive relief" exception to the Eleventh Amendment would be regarded as "persons" under § 1983 and hence those

claims could be brought in federal or state court. *Will v. Michigan,* 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10.

If any of the federal claims in this case are barred by the Eleventh Amendment, the Court will nevertheless have original jurisdiction over the suit to merit removal to federal court under § 1441 as long as there is at least one federal claim that is not barred by the Eleventh Amendment. In Part II below the Court addresses the Eleventh Amendment issue.

## II. *Eleventh Amendment*

In general, the Eleventh Amendment bars suits in federal courts against states and state officials sued in their official capacities. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amd. XI. The Eleventh Amendment also bars suits in federal court brought against a state by its own citizens. *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Shaw v. Cal. Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986).

In the case at bar Plaintiffs are suing the departments and/or agencies of the State of Hawaii (the State of Hawaii DOE and BOE) and various state officials in their official capacities. Below the Court first explores whether Defendants waived their Eleventh Amendment immunity in this case and, concluding that they did not, the Court then addresses whether the claims against these defendants are barred by the Eleventh Amendment.

### A. *Waiver*

The Eleventh Amendment does not apply where the state defendant has waived its Eleventh Amendment immunity. Waiver is found only when: (1) the state expressly consents to federal jurisdiction in the context of the litigation; (2) a state statute or constitutional provision expressly provides for suit in federal court; or (3) Congress expressly abrogates the Eleventh Amendment. *Charley's Taxi Radio Dispatch v. SIDA of Hawaii,* 810 F.2d 869, 873 (9th Cir.1987) (citing *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). However waiver or abrogation of a state's Eleventh Amendment immunity will only be found where such waiver is expressed unequivocally. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

In the case at bar, Plaintiffs argue that Defendants waived their Eleventh Amendment immunity by their actions in this litigation. The Court disagrees.

#### 1. *Waiver In the Context of This Litigation*

##### a. *Removal by Defendants*

Plaintiffs assert that Defendants consented to be sued in this action—and thereby waived their Eleventh Amendment immunity—by removing this case to federal court. Though the Ninth Circuit has not yet addressed this issue, circuit courts outside this jurisdiction, as well as one district court within the Ninth Circuit, hold that a state does not necessarily waive its Eleventh Amendment immunity by filing a notice of removal in federal court. *See Porter v. State of Illinois,* 36 F.3d 684 (7th Cir.1994); *Frances v. Wright,* 19 F.3d 337 (7th Cir.1994); *Ritter v. Univ. of Michigan,* 851 F.2d 846 (6th Cir. 1988); *McKay v. Boyd,* 769 F.2d 1084, 1086–87 (5th Cir.1985).

The mere fact that a state defendant removes the case to federal court does not in itself establish such an unequivocal waiver. In order for the removal to be construed as an express waiver, the state defendant must not only intend to waive the state's Eleventh Amendment immunity but also be authorized under state law to do so. Even removal by a state's *attorney general* does not waive the state's immunity, where the attorney general does not have explicit authority to waive the defense. *See Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 460–62, 466–68, 65 S.Ct. 347, 349, 352, 89 L.Ed. 389 (1945) (actions by attorney general in non-removed case did not establish waiver of the defense;

appearance and defending on the merits did not establish waiver); *Silver v. Baggiano,* 804 F.2d 1211, 1214 (11th Cir.1986) (removal by state officials does not waive immunity unless those officials are authorized to waive immunity).

Applied in the instant case, Defendants expressly reserved this immunity defense in their Notice of Removal. In addition removal by the State of Hawaii attorney general does not waive the state's Eleventh Amendment immunity because Hawaii law does not authorize the attorney general to waive the state's Eleventh Amendment immunity. Neither Hawaii statutory nor case law authorize the attorney general to waive the state's immunity. Hawaii's relevant statutory provisions, H.R.S. §§ 661–1 and 662–2,[1] waive state immunity in certain types of cases (unrelated here) but are silent as to whether the attorney general can waive immunity in other suits.

b. *Failure to Raise In Motion for Partial Judgement on the Pleadings*

In addition the Court notes that the Defendants did not waive their Eleventh Amendment immunity by raising this defense only in their answer in state court and not raising it in their instant motion for partial judgement on the pleadings.[2] The fact that a state defendant raises the Eleventh Amendment in its answer is sufficient basis on which the court can find that the state did not waive its immunity to be sued in federal court. *Actmedia, Inc. v. Stroh,* 830 F.2d 957 (9th Cir.1986). This holds true even where the state has filed a cross motion for summary judgement in federal court and this motion does not raise the Eleventh Amendment defense. *Gamboa v. Rubin,* 80 F.3d at 1350 (remanding Medicaid claim against a state defendant to state court because cross motion filed by state was only "to defend itself from suit").

2. *State Statutory Waiver*

Although not raised by Plaintiffs, the Court notes that there is no other basis on which to find that Defendants have waived their Eleventh Amendment immunity. First, the State of Hawaii has not expressly consented to be sued. Although H.R.S. §§ 661–1 and 662–2 waive the state's sovereign immunity to certain types of suits, these provisions do not apply to the instant case.

In H.R.S. § 661–1 the state consents to be sued for monetary relief for violations of state statutes, state regulations, and contracts entered into with the state. *Jacober v. Sunn,* 6 Haw.App. 160, 170, 715 P.2d 813 (1986). However this statute does not extend consent to suits in federal court. First, on its face the statute only confers jurisdiction over these actions to the state courts and is silent as to the state's Eleventh Amendment immunity in federal court. Second, the Hawaii State Legislature has expressly clarified that in § 661–1 the State has not consented to be sued in federal court. *See* Act 135, § 1 Session Laws of 1984. Moreover the Ninth Circuit has interpreted that this provision does not constitute a waiver of Eleventh Amendment immunity. *Price v. Hawaii,* 921 F.2d 950, 958 (9th Cir.1990).

Similarly, in H.R.S. § 662 the state consents to be sued in tort actions. However this provision also does not operate as a waiver in this case to suit in federal court. Although in 1981 a Hawaii federal district court held that this provision impliedly waives the state's sovereign immunity to suits in federal courts, in 1984 the Hawaii State Legislature clarified that it rejects the holding of that case. *See* Act 135, § 1 Session Laws of 1984 (expressly rejecting *In re Holoholo; Trens v. Univ. of Hawaii,* 512 F.Supp. 889, 896 (D.Haw.1981) (implied consent to suit in federal court, in wrongful death action)). In addition this provision does not waive the state's Eleventh Amendment immunity in civil rights actions. *Au v. Hawaii,* 735 F.Supp. 963 (D.Haw.1989), aff'd., 899 F.2d 1224 (9th Cir.1990) (no waiver of Eleventh Amendment). *See also Charley's Taxi Radio Dispatch v. SIDA of Ha-*

---

1. *See infra* for further discussion of these provisions.

2. The Court can raise the Eleventh Amendment issue *sua sponte. See supra; Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.,* 810 F.2d 869, n. 2 (9th Cir.1987).

*waii, Inc.,* 810 F.2d 869 (9th Cir.1987) (finding no waiver in federal antitrust action). Moreover, the Hawaii Supreme Court has held that this provision does not waive immunity for constitutional violations. *Figueroa ex rel. Figueroa v. State,* 61 Haw. 369, 604 P.2d 1198 (1979), reh. denied, 61 Haw. 661 (1980) (involving suit for money damages). The case at bar does not involve a tort action and this statute does not otherwise operate in this civil rights suit to waive the state's immunity from suit in federal court.

For the reasons stated above, H.R.S. §§ 661–1 and 662–2 do not constitute a waiver of Defendants' Eleventh Amendment immunity in this suit.

### 3. *Abrogation of Immunity by Congress*

A state may be sued in federal court when Congress abrogates a state's sovereign immunity pursuant to its powers under section five of the Fourteenth Amendment. *Collins v. State of Alaska,* 823 F.2d 329, 332 (9th Cir.1987). "[C]ongressional exercise of that power should be inferred only when such an intention is expressed 'in unmistakable language in the statute itself.' " *Id.* (citing *Gonzales v. Maher,* 793 F.2d 1470, 1493 (9th Cir.1986)).

■ In the case at bar, Plaintiffs bring suit under the Native American Languages Act and 42 U.S.C. § 1983. Neither of these statutes abrogate the Eleventh Amendment. First, the Native American Languages Act does not contain "unmistakable language" abrogating the state's immunity, and moreover does not even appear to contemplate private remedies against the federal government, let alone the states. *See infra.* Second, the Supreme Court has long held that § 1983 does not abrogate state immunity under the Eleventh Amendment. *Quern v. Jordan,* 440 U.S. 332, 344–46, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979).

For the above reasons the Court concludes that the State of Hawaii has not waived its Eleventh Amendment immunity in this case.

### B. *State Defendants*

■ Plaintiffs are suing the State of Hawaii DOE and BOE, among other defendants. While Plaintiff does not expressly name the State of Hawaii as a defendant, the DOE and BOE are state agencies which are regarded as state entities. As the Supreme Court has noted: "in the absence of consent a suit in which the State *or one of its agencies or departments* is named as the defendant is proscribed ...'' *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (emphasis added). The Ninth Circuit has followed: "a suit against a state agency is considered to be a suit against the state, and thus is barred by the Eleventh Amendment." *Shaw,* 788 F.2d at 603. This is true regardless of the relief sought. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam).

Because the DOE and BOE are state agencies, Plaintiffs' claims against them are barred in federal court by the Eleventh Amendment. The Court dismisses the § 1983 claims against these Defendants because under § 1983 states and state agencies are not "persons''. *See Kruse,* 68 F.3d at 334 n. 2. *See also Will v. Michigan,* 491 U.S. 58, 70–72 and n. 10, 109 S.Ct. 2304, 2312 and n. 10, 105 L.Ed.2d 45 (1989) (discussing definition of "persons'' under § 1983). As discussed above, in *Kruse* the Ninth Circuit appears to approve the procedure of dismissing § 1983 claims barred by the Eleventh Amendment rather than remanding them, on this same rationale that defendants protected by Eleventh Amendment immunity are not "persons'' under § 1983. *Id.* The Court will remand the remaining claims against these defendants (i.e., those not brought under § 1983). *See Gamboa,* 80 F.3d at 1350 (remanding Medicaid claims in suit not involving § 1983).

### C. *State Officials*

■ Although the Eleventh Amendment prevents Plaintiffs from directly suing states and state agencies, the Eleventh Amendment does not bar suits against state officials for prospective injunctive relief. Under this exception to the Eleventh Amendment recognized by the Supreme Court, a plaintiff may sue a state official to challenge the constitutionality of a state official's action by seeking prospective injunctive relief. *Pennhurst*

*State School & Hosp. v. Halderman,* 465 U.S. at 103–05, 104 S.Ct. at 910 (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). This exception extends to suits against state officials for violations of federal statutory law. *Exxon Corp. v. Fischer,* 817 F.2d 1429 (9th Cir.1987) (discussing supremacy clause). If a plaintiff asks a federal court to enjoin an official's future unlawful conduct, the Eleventh Amendment presents no bar because actions by a state official in violation of the constitution or federal law cannot be authorized by a state. *Id.* at 102–03, 104 S.Ct. at 908–910. As the Supreme Court stated in *Pennhurst,* "an official who acts unconstitutionally is 'stripped of his official or representative character.'" *Id.* at 102, 104 S.Ct. at 910 (quoting *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. at 454).

In the case at bar Plaintiffs are suing state officials in their official capacities for prospective injunctive relief under the Native American Languages Act ("NALA" or "Act") and 42 U.S.C. § 1983. The Court discusses these claims more fully below.

### III. *Native American Languages Act*

#### A. *Eleventh Amendment*

Plaintiffs' claims under NALA fall under an exception to the Eleventh Amendment because Plaintiffs seek prospective injunctive relief from state officials to remedy an alleged present violation of this statute. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In particular, Plaintiffs essentially want Defendants to establish more Hawaiian language immersion programs in public schools. Though this might impact state coffers, such relief may be justified where it is merely ancillary to ensuring the state's future compliance with federal law. As the Supreme Court has held, such prospective relief is not barred by the Eleventh Amendment even where it has a "substantial" effect on the state treasury. *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Edelman v. Jordan,* 415 U.S. 651, 660–69, 94 S.Ct. 1347, 1355–58, 39 L.Ed.2d 662 (1974).

Because Plaintiffs' claims under NALA are not barred by the Eleventh Amendment, below the Court discusses the merits of this claim.

#### B. *Private Cause of Action*

■ Though the Eleventh Amendment does not bar Plaintiffs' NALA claims, the Court finds that these claims nevertheless fail because NALA does not provide a private cause of action.

NALA, 25 U.S.C. § 2903, declares that "[i]t is the policy of the United States to ... preserve, protect, and promote the rights of Native Americans to use, practice, and develop Native American languages." Moreover, § 2904 of the Act provides that the rights of "Native Americans to express themselves through the use of Native American languages shall not be restricted in any public proceeding, including publicly supported education programs." 28 U.S.C. § 2904. Congress defines the term "Native American" to include those residents of Hawaii who are of Hawaiian descent. 29 U.S.C. § 2902. Congress enacted these provisions in part to articulate its goal of protecting and encouraging the unique language and culture of native populations including the Native Hawaiians.

Although NALA was enacted in 1990 there is little case law interpreting the statute. Today the Court addresses an issue of first impression: whether NALA confers a private cause of action to sue. Plaintiffs contend that although the statute does not expressly provide a private cause of action, NALA nevertheless creates an implied cause of action for members of the class protected under the act. In particular Plaintiffs claim that Native Hawaiians are entitled to sue the State of Hawaii's educational departments and officials for "restricting" their use of the Hawaiian language in public schools. However in actuality it appears that in fact Plaintiffs all but concede that the State of Hawaii currently does not restrict the use of Hawaiian language in schools and instead argue that the State should take further efforts to *promote* the Hawaiian language. By Plaintiffs' own admission the State has instituted Hawaiian language immersion programs in which 923 students are enrolled. Plaintiffs' expert Dr. Wilson strains the definition of

"restrict" in an apparent attempt to assert that NALA applies in this case. Dr. Wilson contends that Defendants have "restricted" the use of Hawaiian language in schools by (1) failing to open up sufficient slots for more students to participate in the immersion programs, (2) placing immersion schools in inconvenient and out-of-the-way locations without providing transportation to those schools, (3) valuing teachers with DOE certification over those with Hawaiian language skills, and (4) failing to promise a continued State commitment to immersion programs so that parents will be encouraged to place their children in these programs.

This aside, the sole issue currently before the Court is whether NALA provides a private cause of action under which Plaintiffs may sue. To determine whether Congress intended to imply a private cause of action in a federal statute, the Supreme Court set forth the following four factors in the seminal case of *Cort v. Ash:* (1) is the plaintiff in the special class which the statute intended to protect; (2) is there legislative intent to create a private cause of action; (3) is a private cause of action consistent with the purpose of the legislative scheme; and (4) is the cause of action traditionally relegated to state law, in which case it would be inappropriate to infer a federal cause of action. *Channel Star v. So. Pacific Trans. Co.,* 77 F.3d 1135, 1136–37 (9th Cir.1996); *Harper v. Federal Land Bank of Spokane,* 878 F.2d 1172 (9th Cir. 1989) (citing *Cort v. Ash,* 422 U.S. 66, 76–79, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975)). Among these four factors "[t]he most important inquiry here ... is whether Congress intended to create the private remedy sought by the plaintiffs." *Suter v. Artist M.,* 503 U.S. 347, 364, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992); *Fed. of Afr. American Contractors v. Oakland,* 96 F.3d 1204 (9th Cir.1996).

Applying the *Cort* test in the present case, the Court concludes that Congress did not intend NALA to create a private cause of action against states. Although Plaintiffs represent a subset of those who NALA intended to benefit—Native Hawaiians who speak Hawaiian—there is no indication that Congress intended Hawaiians or any other Native Americans to have a private cause of action under the Act. Though the statute does not expressly discuss whether it creates a private cause of action, there are otherwise no ambiguities in the statute from which one might infer an implied private cause of action, even if any ambiguities are construed in favor of Native Americans. *See So. Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 506, 106 S.Ct. 2039, 2044, 90 L.Ed.2d 490 (1986) (construe ambiguities in favor of Native Americans).

First and foremost, the legislative history behind the Act weighs against inferring a private remedy. When President Bush signed the bill to enact it into law he specifically stated that he "construe[s] [the Act] as a statement of general policy and do[es] not understand it to confer a private right of action on any individual or group." 1990 U.S.C.C.A.N. 1849–1, 1990 WL 300956 (Leg. Hist. of Pub.L. 101–477). Moreover President Bush directed his comments to § 2904, the provision which states that Native American languages "shall not be restricted" in public proceedings including public education. As discussed in further detail below, § 2904 is the only provision of NALA which could conceivably be interpreted to impose requirements on states. Although the Congressional legislative history is silent as to whether Congress intended to create a private remedy, the legislative history discusses NALA as necessary only to articulate a "policy" of the United States and to serve as "an acknowledgement that indigenous Americans have a right to practice their cultures and choose their own lifestyles." S.Rep. No. 250, 101st Cong., 2nd Sess.1990, 1990 U.S.C.C.A.N. 1840.

Second and relatedly, the Act itself merely speaks in terms of general policy goals and does not create a new set of regulations which might lend itself to enforcement through suits by private citizens. NALA consists largely of a statement of "findings" that unique Native American languages and cultures have been suppressed in the past and should now be fostered. Based on these findings NALA sets forth a "declaration of policy" that it is the policy of the United States to encourage and promote the use of

Native American languages. 25 U.S.C. §§ 2901, 2903.

■■■ The only relevant provision which might require affirmative steps by states to carry out this policy is § 2904, which provides that "[t]he right of Native Americans to express themselves through the use of Native American languages *shall not be restricted* in any public proceeding, including publicly-supported education programs."[3] 25 U.S.C. § 2904 (emphasis added). It is unclear whether this provision extends to state public education, rather than federally funded education programs discussed in other portions of the Act. Yet even assuming that it does, this "shall not be restricted" language does not place an affirmative duty on states to promote Hawaiian language through funding immersion programs, as suggested by Plaintiffs. Rather, assuming this provision applies to states, at most it prevents the state from barring the use of Hawaiian languages in schools. In addition, as discussed *supra,* despite Plaintiffs' contentions to the contrary it does not appear that the State of Hawaii currently restricts the use of Hawaiian languages in schools. To the contrary, the State has created Hawaiian language immersion programs in which 923 students participate and which Congress commended as an exemplary model when it enacted NALA.

Further, all other portions of the Act do not create affirmative duties on the states but merely evince a federal policy to "encourage" states to support Native American languages. For example § 2903 declares that it is the policy of the United States to allow exceptions to teacher certification programs for federal education programs and "to *encourage* State and territorial governments to make similar exceptions." 29 U.S.C. § 2903(2) (emphasis added). The Act also "encourage[s] State and local education

programs to work with Native American parents, educators, Indian tribes, and other Native American governing bodies in the implementation of programs to put this policy into effect." 29 U.S.C. § 2903(4). Last, the Act states a general policy to "encourage all institutions of elementary, secondary, and higher education, where appropriate, to include Native American languages in the curriculum in the same manner as foreign languages and to grant proficiency in Native American languages the same full academic credit as proficiency in foreign languages." 29 U.S.C. § 2903(8). This creates no affirmative duties by states and hence cannot support a private cause of action against states for noncompliance with the Act.[4]

■■■ Additionally, apart from § 2904 those portions of NALA which create affirmative obligations apply only to the federal government, not states. Plaintiffs argue that the Court should apply these federal obligations to the State of Hawaii because the State has a special relationship with Native Hawaiians akin to the federal government's relationship with Native American Indians. Albeit the State has a special relationship with the Native Hawaiian people, but this relationship is associated with the State's role in administering lands held in trust for the Hawaiian people and does not necessarily extend to the full extent of the duties the federal government may owe to Native American Indians. The Ninth Circuit has described the origins of the State's duty to Native Hawaiians as follows:

> In 1921, Congress enacted the Hawaiian Homes Commission Act which mandated that certain land, designated the Hawaiian home lands, be held in trust for the benefit of native Hawaiians. In 1959, when Hawaii was admitted into the union, section 4 of the Hawaiian Admission Act, Public

---

**3.** Although not relevant here, the Act also requires the President to submit a report recommending amendments to federal laws and to direct the heads of Federal departments to evaluate their policies that affect Native American languages. 25 U.S.C. § 2905.

**4.** Moreover even if § 2903(8) imposes any affirmative duties on states, which it does not, it cannot be read to require states to provide Na-

tive American immersion programs. This portion of the Act only *encourages* the states to treat Native American languages as they treat any other foreign language taught in schools. For example this section encourages schools to give the same course credit to students who take Hawaiian language classes as it does to those who study typical foreign languages such as Spanish or French.

Law No. 86–3, 73 Stat. 4, 5 (1959), required that the provisions of the Commission Act be incorporated into the constitution of the state. The incorporation was described "as a compact with the United States." The Admission Act reiterated the state's obligation to hold the lands in trust and retained a right of federal government intervention to protect the trust. As we explained in our earlier opinion in this case:

> the Admission Act conveyed the United States' title to the Hawaiian home lands to the state, id. at § 5(b), and requires Hawaii to hold these lands as a public trust ... for the betterment of the conditions of native Hawaiians ... and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States. Id. at § 5(f). (footnotes deleted)

*Keaukaha–Panaewa Community Association v. Hawaiian Homes Commission,* 739 F.2d 1467, 1469 (9th Cir.1984) (internal cites omitted).

Plaintiffs cite to the recent decision in *Rice v. Cayetano* to stand for the proposition that the State of Hawaii has stepped into the shoes of the federal government in all respects pertaining to Native Hawaiians. *Rice v. Cayetano,* 941 F.Supp. 1529 (D.Haw.1996). *Rice* held that the rational basis test should apply to an equal protection challenge to a state-sponsored vote designed only for Native Hawaiians. *Id.* at 1543. The district court applied a rule articulated by the Supreme Court in *Morton v. Mancari,* 417 U.S. 535, 555, 94 S.Ct. 2474, 2485, 41 L.Ed.2d 290 (1974), that the rational basis test should be applied to federal race-conscious legislation targeted at Native Americans. *Rice* at 1540–41. This rule is "premised on the historically unique relationship between the federal government and American Indians." *Id.* Applying that rule, the court in *Rice* found that Native Hawaiians "have a special relationship with the United States that closely parallels that of the American Indians." *Id.* at 1542. *Rice* extended the *Morton* rule to the "Hawaiian vote" legislation enacted by the State of Hawaii because the court found that the State had a special relationship with Native

Hawaiians due to "its limited capacity as the appointed guardian of the Hawaiian Home lands and as trustee of the public trust created by the federal government in the Admission Act." *Id.* at 1543. The court in *Rice* specifically stated: "As administrator of the Hawaiian home lands program and as trustee of the ceded lands, the State is charged with the traditional federal responsibility of promoting the general welfare and rehabilitation of the Native Hawaiian people." *Id.* at 1549.

This Court does not read *Rice* to suggest that whenever a federal statute imposes obligations on the federal government to Native Americans that the statute should be interpreted to impose those same federal obligations on the State of Hawaii. As discussed *supra,* the referenced trust relationship pertains to the State as administrator of the Hawaiian Home lands and as trustee of the ceded land under the Admission Act. The voting issue before the district court in *Rice* implicated the State's trust obligations, as the vote could impact the way in which an elected Hawaiian governing body might seek to control those lands held in trust. This Court declines Plaintiffs' invitation to extend NALA's regulations pertaining to the federal government to the State of Hawaii because the express language of the statute belies such an interpretation. Native Hawaiians and the State of Hawaii were explicitly within the contemplation of Congress at the time it enacted NALA, as shown by the definition section which includes Hawaiians as a subset of Native Americans and the legislative history which praises the strides the State of Hawaii has taken to promote the Hawaiian language in schools. Despite this fact Congress chose not to make NALA's mandate to federal entities applicable to the State of Hawaii even though it could have readily done so.

For these reasons the Court concludes that NALA provides Plaintiffs with no direct private right of action against the Defendants.

### C. *Enforceable Rights Under § 1983*

Even where there is no direct private cause of action under a particular federal statute, in general plaintiffs may sue under 42 U.S.C. § 1983 for violations of the statute.

*See Keaukaha–Panaewa*, 739 F.2d at 1470 (finding that lack of implied cause of action under Hawaiian Homes Act does not preclude private enforcement under § 1983). Section § 1983 provides a vehicle for enforcing rights even where the allegedly violated statute does not provide a direct private cause of action. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (valid § 1983 claim despite no private cause of action under Social Security Act). There are two "exceptions" to this rule: a plaintiff may not sue under § 1983 for a statutory violation where (1) the statute itself provides that Congress has foreclosed private enforcement and (2) the statute does not create enforceable rights. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). NALA does not expressly prohibit private enforcement, so the only issue is whether the Act creates enforceable rights under § 1983, discussed below.

As to this enforceable right inquiry, § 1983 cannot be used to enforce a violation of a federal statute " 'where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983.' " *Suter v. Artist M.*, 503 U.S. 347, 356, 112 S.Ct. 1360, 1366, 118 L.Ed.2d 1 (1992) (quoting *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). The Supreme Court has set forth three factors to assess whether a statute provides enforceable rights that may be pursued through § 1983: (1) is the plaintiff an intended beneficiary of the statute, (2) does the statute impose a binding obligation on the state, and (3) is the asserted right too "vague and amorphous" as to be "beyond the competence of the judiciary to enforce?" *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (intended to benefit plaintiff); *Freestone v. Cowan*, 68 F.3d 1141, 1146 (9th Cir.1995) (citing *Wilder* three-factor test).

In addition the Supreme Court has further emphasized that this is a stringent test: the statute must "unambiguously" confer an enforceable right to sue under § 1983. *Suter*, 503 U.S. at 363–64, 112 S.Ct. at 1370. *Suter* involved the Adoption Assistance and Child Welfare Act of 1980 which required states to use "reasonable efforts" to prevent removal of children from their homes and to promote family reunification. *Id.* at 351–53, 112 S.Ct. at 1364. The Supreme Court held that this provision could "plausibly [be] read to impose only a rather generalized duty on the State, to be enforced not by private individuals...." Some courts have questioned whether *Suter* disposes of the *Wilder* three-part test, but the Ninth Circuit has held that it does not. *Freestone*, 68 F.3d at 1148. As interpreted by the Ninth Circuit "*Suter* represents an elaboration and amplification of the *Wilder* test rather than an unannounced and unacknowledged departure." *Id.* Indeed *Suter* cannot be interpreted to require something akin to an express indication of an enforceable right to sue, as doing so would merge the § 1983 inquiry with the *Cort v. Ash* private right of action inquiry, thereby defeating the very function served by § 1983 suits.

 Applied to the present case, the Court finds that NALA does not unambiguously confer upon Plaintiffs an enforceable right to sue under § 1983. Albeit the first prong of the *Wilder* test appears to be satisfied because NALA was intended to benefit the class of which Plaintiffs belong, Native Hawaiians. However it is less clear whether the second prong of the *Wilder* test is satisfied here. Section 2904 of the statute imposes a binding obligation on governmental entities to not restrict the use of Native American languages: "The right of Native Americans to express themselves through Native American languages *shall not be restricted* in any public proceeding, including publicly-supported education programs." 25 U.S.C. § 2904 (emphasis added). It is unclear whether this provision applies to state public education, as opposed to federally-funded education programs discussed in other portions of the Act. All other portions of NALA make a clear distinction between state programs versus federal programs and speak in purely hortatory terms as to state programs; the only other mandatory provisions apply strictly to federal programs. This may support a plausible interpretation either way, but in light of *Suter* the Court

finds that this defeats a finding that the statute "unambiguously" confers an enforceable right against states.

More importantly, even if the second portion of the *Wilder* test was satisfied, the third factor is not. The Court finds the requirement in § 2904 that use of Native American languages "shall not be restricted" is too vague or amorphous to support an enforceable right.[5] The Supreme Court found in *Suter* that the phrase 'reasonable efforts' "imposed only a rather generalized duty on the State, to be enforced not by private individuals, but by the Secretary ..." *Suter,* 503 U.S. at 363, 112 S.Ct. at 1370. Under NALA the term 'restriction' at first blush does not appear as nebulous as the phrase 'reasonable efforts' in *Suter.* However NALA provides no guidance to the judiciary as to what types of restrictions violate the Act. It would appear impracticable for public schools to not impose any restrictions on Native American languages, such as requiring students to speak English in a class taught in English. If not, in application the statute would effectively require teachers to be bilingual (or multi-lingual as the case may be) in order to understand their students who are allowed to respond in their native tongue. This would defeat Congress' apparent intention that NALA would not impose affirmative obligations on states, as evidenced by the other provisions in NALA.

Moreover the statute is wholly devoid of guidelines to interpret whether such restrictions violate NALA. In this way NALA is distinct from the provision of the Social Security Act at issue in *Freestone* which required "substantial compliance" by states. While the phrase in *Freestone* appears "no more concrete and unambiguous than the 'reasonable efforts' phrase found problematic in Suter," the Ninth Circuit found that it created an enforceable right because the phrase did not "stand alone" and instead was accompanied by "highly detailed requirements imposing specific duties on the states." *Freestone,* 68 F.3d at 1148. In contrast, nowhere does NALA attempt to specify how to interpret the phrase "shall not be restricted."

For these reasons the Court finds that although the Eleventh Amendment does not bar the Court from exercising jurisdiction over Plaintiff's claims under NALA, these claims fail because NALA provides no direct private cause of action and otherwise is not enforceable under § 1983.

IV. *Federal Constitutional Claims Under § 1983*

A. *Eleventh Amendment*

As stated *supra,* the Supreme Court has held that 42 U.S.C. § 1983 does not abrogate state sovereign immunity under the Eleventh Amendment. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). In turn, § 1983 suits against state officers for retrospective or compensatory damages are barred by the Eleventh Amendment when the officer is sued in his or her official capacity. *Blaylock v. Schwinden,* 862 F.2d 1352, 1353–54 (9th Cir.1988) (holding that damages claims against state officials sued in their official capacities are barred by sovereign immunity). However, suits against state officers for declaratory or prospective injunctive relief are not barred by the Eleventh Amendment. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (prospective declaratory and injunctive relief in suit against state official sued in official capacity not barred by Eleventh Amendment). This exception applies even if the injunctive relief costs the state money, as long as the money is for prospective relief. *Id.; Edelman v. Jordan,* 415 U.S. 651, 660–69, 94 S.Ct. 1347, 1355–58, 39 L.Ed.2d 662 (1974) (discussing how prospective injunctive relief can drain state coffers). Courts must "look to the substance rather than to the form of the relief sought" to determine whether the relief violates the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 279, 106 S.Ct. 2932, 2940–41 (citing *Edelman v. Jordan* ).

▉ Plaintiffs assert that their constitutional claims brought under § 1983 are not

---

**5.** In fact, as discussed *infra,* Plaintiffs admit that the State imposes no such restrictions but rather they seek the State to further promote the Native Hawaiian language (although Plaintiff's expert Dr. Wilson appears to deem anything less than unlimited access to immersion programs as a "restriction" of the language).

barred by the Eleventh Amendment because they seek prospective injunctive relief for alleged violations of their First and Fourteenth Amendment rights due to the State of Hawaii's past discrimination against the use of Hawaiian languages in public schools. In particular, Plaintiffs ask the Court to require Defendants (1) to provide sufficient resources (teachers, classrooms, and learning materials) for Hawaiian immersion programs in public schools, (2) to devise a plan to expand Hawaiian language programs and make them accessible, and (3) to develop a pool of teachers for Hawaiian language immersion education.

The Court finds below that the relief which Plaintiffs seek is retrospective rather than prospective because it addresses a past constitutional violation of when the State of Hawaii banned the use of the Hawaiian language in schools.

According to Plaintiffs, beginning in 1896 Hawaii law banned students from speaking the Hawaiian language anywhere on school grounds. Purportedly children faced harsh physical punishment for speaking Hawaiian at schools and parents were reprimanded by school officials for speaking Hawaiian to their children at home. *See* Complaint, p. 5 (quoting Native Hawaiians Study Commission, Vol. 1, June 23, 1983 at 196). Indeed such treatment would violate the constitution, as held by the Supreme Court in *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). In *Meyer* the Supreme Court struck down a state law which banned teaching certain foreign languages below the eighth grade in public schools, a law enacted to prevent immigrant children from studying in their native tongue. *Id.* at 396–402, 43 S.Ct. at 626–27. Similarly, in the line of *Meyer* the Ninth Circuit recently struck down a restrictive "English only" provision in the Arizona state constitution. *Yniguez v. Arizonans for Official English*, 69 F.3d 920 (9th Cir.1995) (en banc). The Arizona law went beyond merely stating that English was

the official language of Arizona; indeed it went so far as to forbid state officials and employees from speaking any language other than English while performing their official duties, with some exceptions including for foreign languages spoken by public teachers. *Id.* at 928–29. The Ninth Circuit held that the statute was overbroad in adversely affecting the speech rights of Arizona employees and officials as well as in severely burdening the "the interests of non-English-speaking Arizonians in receiving all kinds of essential information." *Id.* at 932.

Plaintiffs concede that the State of Hawaii has long ceased this alleged invidious discrimination.[6] Nevertheless they argue that the injunctive relief is prospective because the State has a present constitutional duty to eradicate the effects of this past intentional discrimination. Plaintiffs essentially argue that by failing to fulfill this duty the State has engaged in a continuing constitutional violation, traced back to the initial discrimination which occurred in the past. Hence Plaintiffs assert that the relief they seek comports with the rule that injunctive relief is prospective if it is designed to correct a continuing constitutional violation. However the fact that Plaintiffs allege a continuing violation is not necessarily sufficient to establish that the relief is indeed prospective. As the Ninth Circuit found in *Ulaleo v. Paty*, 902 F.2d 1395 (9th Cir.1990), Plaintiffs may not rest on allegations alone that a violation which occurred in the past somehow creates a continuing violation. *Id.* at 1339–40. *Ulaleo* held that the Eleventh Amendment barred claims under the Hawaii Admission Act that in the past state officials had violated their obligations in respect to lands held in trust for the Hawaiian people. *Id.*

Plaintiffs trace the source of the State's duty to desegregation cases which hold that state school boards have a duty 'to eliminate all vestiges of state-imposed segregation.' Many of the cases in this area appear to interpret this to mean that the state has a

---

**6.** According to Plaintiffs the state law remained on the books until 1986, although it does not appear that it was enforced at that time. *See* Complaint, pp. 4–5. Plaintiffs claim that in 1919 and 1935, respectively, the Hawaii State Legislature required that Hawaiian be taught in all high schools and required that Hawaiian be taught daily in those schools serving Hawaiian Home areas. However Plaintiffs contend that the DOE ignored these provisions, which were allegedly in turn deleted in 1968. *See* Complaint, p. 5 (citing Native Hawaiians Study Commission, Vol. 1, June 23, 1986 at 196).

duty to eradicate the segregated system itself. It is unclear to what extent the term "vestiges" includes the lingering *effects* of the discrimination as well. For example most of the desegregation cases focus on the state's duty to eliminate the segregated school system, i.e., the duty to eliminate the dual-system of all-white and all-black schools. *Keyes v. School District No. 1,* 413 U.S. 189, 203, 93 S.Ct. 2686, 2695, 37 L.Ed.2d 548 (1973). In *Keyes* the Supreme Court defined this duty as:

> [W]here a dual system was compelled or authorized by statute at the time of [the] decision in *Brown v. Board of Education,* 347 U.S. 483, [74 S.Ct. 686, 98 L.Ed. 873] (1954), the state automatically assumes an affirmative duty 'to effectuate a transition to a racially nondiscriminatory school system,' that is, to eliminate from the public schools within their school system all vestiges of state-imposed segregation.

*Id.* at 200, 93 S.Ct. at 2693.

One Supreme Court case has expounded further on this duty to clarify that it encompasses eliminating the *effects* of the discrimination. *Milliken v. Bradley,* 433 U.S. 267, 290, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977). In *Milliken v. Bradley* the Supreme Court held that injunctive relief in the form of remedial education did not violate the Eleventh Amendment even though the violation occurred in the past. The Supreme Court reasoned that while the violation of segregation occurred in the past, its effects on the victims of that discrimination continue to linger.

Subsequent Supreme Court cases cite *Milliken* for the proposition that injunctive relief is prospective and hence not barred by the Eleventh Amendment if it targets a "continuing violation" of federal law. *Green v. Mans-*

*our,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). These cases do not specify exactly what constitutes a continuing violation, but *Milliken* provides guidance even though it did not use the "continuing violation" terminology.[7] *Milliken* found that the state school system had not met its duty "to eliminate a de jure segregated school system" because it had not sufficiently "wipe[d] out continuing conditions of inequality produced by the inherently unequal dual school system long maintained ..." *Milliken,* 433 U.S. at 289, 97 S.Ct. at 2762. *Milliken* found no present segregation but found that the nature of the past violation (segregation) would have *continuing effects* so that the *victims* "will continue to experience the effects of segregation," such as by educational deficiencies. *Id.* at 290, 97 S.Ct. at 2762.

However *Milliken* does not represent a significant departure from *Keyes.* Like *Keyes, Milliken* ultimately frames the state's duty as the duty to effectuate a transition to a nonsegregated school system. Though *Milliken* approved the use of remedial education programs, these programs were necessary to accomplish a transition to a nonsegregated system: black students who had received substandard education in segregated schools needed remedial education programs to compete on an academic level playing field in a unified school system. Thus *Milliken* remedied the latent effects of discrimination only to the extent necessary to effectuate a transition to a unified system. The case does not stand for the proposition that states have a duty to counter the ongoing societal effects of discrimination which occurred generations ago.

Applied in the case at bar Plaintiffs assert that this duty found in desegregation cases to eradicate the effects of past discrimination extends to the past discrimination by the

---

7. *Milliken* itself did not speak in terms of "continuing violation" but rather held that the injunctive relief was prospective because it attacked the present "continuing effects of past misconduct." *Milliken,* 433 U.S. at 290, 97 S.Ct. at 2762. In fact *Milliken* could be interpreted to not require a continuing violation. Though subsequent cases have stated that *Milliken* requires a continuing violation, *Milliken* does not appear to require a present violation. Instead *Milliken's* characterization of whether the injunctive relief comports with the Eleventh Amendment emphasizes the nature of the relief itself as prospective—i.e.,

forward-looking—rather than when the predicate violation occurred. *Id.* The only tie between the past violation and the present were the present effects, which suggests that the existence of present effects is sufficient to find a continuing violation. The Supreme Court in *Milliken* distinguished the case from the retrospective relief in *Edelman v. Jordan* because the relief in *Edelman* would "instantaneously restore the victims of unlawful conduct to their rightful condition," whereas the injunction in *Milliken* looked to the future by trying to eradicate the future continuing effects of segregation. *Id.* at n. 21.

State of Hawaii when it banned pupils from speaking the Hawaiian language in schools. Plaintiffs allege that this ban, which has long been lifted, has led to the virtual extinction of the Hawaiian language and the resulting poor performance of Hawaiians in educational programs. Plaintiffs' expert in Hawaiian education, Dr. William Wilson, opines that Native Hawaiians continue to suffer the on-going effects of the past discrimination in the form of lower SAT scores, lower percentage representation in the gifted and talented programs in schools, and over-representation of students in programs for learning disabilities. Dr. Wilson believes this record of underachievement is a result of the students' inability to study in their mother tongue.

■ However the Court declines Plaintiffs' invitation to extend *Milliken* to this case. First, it is unclear whether the duty discussed in *Milliken* applies outside the context of desegregation cases. History has shown that the transition from a segregated school system is a long process whereas the ban on Hawaiian language in schools can be—and indeed was—lifted and effectuated instantaneously. Second, even if the duty did apply in this case, the Court does not read *Milliken* to justify remedying the general effects of discrimination. *Milliken* remedied the effects of the discrimination on the specific victims of discrimination, those who had themselves been in the desegregated schools. In contrast in the case at bar Plaintiffs ask the Court to impose upon the State a duty to enact remedial programs targeted at the offspring or descendants of those Hawaiians discriminated against years ago.

For these reasons the Court concludes that the relief Plaintiffs seek is retrospective, not prospective, and thus it does not fall within the "prospective injunctive relief" exception to the Eleventh Amendment. These constitutional claims under § 1983 are hence barred by the Eleventh Amendment and the Court cannot exercise removal jurisdiction over them. The Court dismisses these § 1983 claims per *Kruse v. Hawaii* because, as these claims are barred by the Eleventh Amendment, these officials are not "persons" under § 1983. Therefore these claims can be brought in neither state nor federal court. *See Kruse v. Hawaii; Will v. Michigan.*

## V. *State Law Claims*

■ Despite federal question jurisdiction over Plaintiffs' federal statutory claim under NALA, the Eleventh Amendment bars federal courts from exercising jurisdiction over state law claims against a state. *Pennhurst,* 465 U.S. at 118–22, 104 S.Ct. at 918–19. As the Supreme Court stated in *Pennhurst:*

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their condition to state law.

*Id.* at 106, 104 S.Ct. at 911.

### CONCLUSION

For the above reasons the Court GRANTS Defendants' motion for partial judgement on the pleadings. First, Plaintiffs' claims against the State of Hawaii, the DOE, and the BOE are barred by the Eleventh Amendment and thus the Court lacks removal jurisdiction over them. Thus the Court dismisses the § 1983 claims against these defendants, under *Kruse v. Hawaii,* and remands the non–§ 1983 claims against these defendants to state court. Second, the Court finds that the Eleventh Amendment bars Plaintiffs' federal constitutional claims under § 1983 brought against the defendant state officials in their official capacities because the relief sought is retrospective, not prospective. Under *Kruse* the Court dismisses those claims. Third, the Court grants Defendants judgement on the NALA claims. Though the Court has jurisdiction under Plaintiffs' claims for prospective injunctive relief under NALA, NALA does not provide a direct private cause of action and does not provide enforceable rights under § 1983. Last, the Court remands the state law claims to state court because there is no exception to the Eleventh Amendment which warrants entertaining those claims in federal court.

IT IS SO ORDERED.