**Robert SHEREZ, Plaintiff,**

v.

**STATE OF HAWAI'I DEPARTMENT OF EDUCATION; Patricia Hamamoto, Superintendent of Hawaii Schools; Meredeth Maeda, Principal, Castle High School; Sara Gronner or Gronna, Vice Principal of Castle High School, Defendants.**

**Civil. No. 04–00390JMS.**

United States District Court,
D. Hawai'i.

Sept. 1, 2005.

Andre S. Wooten, Honolulu, HI, for Plaintiff.

James Earl Halvorson, Nelson Y. Nabeta, Department of the Attorney, Honolulu, HI, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS*

SEABRIGHT, District Judge.

## I. INTRODUCTION

On August 24, 2004, Plaintiff Robert Sherez ("Sherez") filed his First Amended Complaint ("Complaint") against the State of Hawaii Department of Education ("DOE"), Patricia Hamamoto, Meredeth Maeda, and Sarah Gronna, alleging nine state and federal law claims. Hamamoto is sued in her official capacity only, while Maeda and Gronna are sued in their official and individual capacities. Sherez alleges that defendants discriminated against him on the basis of his race and sex. His Complaint asserts the following counts against all defendants:

I. Title IX of the Education Amendments of 1972, Pub.L. 92–318, 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq;*

II. Deliberate indifference under Title IX;

III. Intentional infliction of emotional distress ("IIED") under Hawaii state law;

IV. 42 U.S.C. § 1981;

V. 42 U.S.C. § 1985;

VI. 42 U.S.C. § 1986;

VII. 42 U.S.C. § 1983;

IX. Chapters 368 and 378 of the Hawaii Revised Statutes ("HRS"); and

X. Title VII of the Civil Rights Act of 1964, 78 Stat. 257, as amended, 86 Stat. 109, 42 U.S.C. § 2000e.[1]

Sherez seeks: 1) a judicial declaration that the defendants violated state and federal law; 2) an injunction prohibiting defendants' "illegal practice of racial discrimination and harassment" in hiring teachers; 3) "compensatory, special, statutory, liquidated, exemplary, and punitive damages and other monetary relief in the amount of $10,000,000.00"; and 4) attorney's fees and costs.

On May 26, 2005, the DOE and Gronna, in her official capacity ("state defendants"), moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to Sherez's state law claims (Counts II and IX) and his §§ 1981, 1985, 1986, and 1983 claims (Counts IV, V, VI, and VII). The state defendants claim that the Eleventh Amendment bars these claims against state agencies and state officers. The court agrees with respect to the claims against the DOE and the damage claims against Gronna in her official capacity. The court therefore grants judgment on the pleadings in favor of the DOE on the following claims: IIED, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and HRS §§ 368 and 378 (Counts III, IV, V, VI, VII, and IX). The court also grants judgment on the pleadings in favor of Gronna in her official capacity on Sherez's IIED and HRS §§ 368 and 378 claims (Counts III and IX) and on Sherez's §§ 1981, 1983, 1985, and 1986 claims (Counts IV, V, VI, and VII) for damages. The Eleventh Amendment does not bar federal claims against state officials for prospective relief; therefore, the court denies Gronna's Rule 12(c) motion for judgment on the pleadings as to Sherez's §§ 1981, 1983, 1985, and 1986 claims (Counts IV, V, VI, and VII) insofar as Sherez seeks prospective relief under these statutes.

On June 3, 2005, Gronna, in her individual capacity, moved for an order granting judgment on the pleadings as to Sherez's Title IX, Title VII and state law claims (Counts I, II, II, IX, and X). Gronna argues that she cannot be sued in her individual capacity under Title IX, Title VII or HRS chapters 368 and 378 and that Sherez's Complaint fails to allege facts sufficient to support a claim for IIED. The court agrees that Gronna cannot be sued in her individual capacity under Title IX or Title VII and grants judgment on the pleadings in her favor as to those claims (Counts I, II, and X). The court also agrees that Sherez has failed to state a claim for IIED and dismisses that claim (Count III) against her as well. However, the court concludes that HRS § 378 provides a cause of action against Gronna in her individual capacity and therefore the court denies her motion for judgment on the pleadings as to this claim (Count IX). Because several of Sherez's federal law claims against the state defendants and Gronna survive this order, the court retains supplemental jurisdiction over the HRS chapter 378 claim (Count IX).

The motions came before this court for hearing on August 15, 2005.

---

1. The Complaint does not allege a "Count VIII." Instead, it skips from Count VII to Count IX.

## II. BACKGROUND

Sherez is a special education teacher and tutor for Castle High School and has been a DOE employee since 1986. He alleges that either the DOE or its agents have repeatedly denied him tutoring jobs on account of his sex and race beginning in the fall of 2003. The complaint alleges that in the fall of 2003, Gronna created a policy prohibiting male teachers from tutoring female students at Castle High School. As a result of this policy, Sherez filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Hawaii Civil Rights Commission ("HCRC") that same Fall. He alleges that after filing these complaints, the defendants retaliated against him by refusing to hire him as a special education teacher, and by either reducing or eliminating his tutoring assignments.

Sherez also makes a number of conclusory allegations of racial discrimination against non-Asian Americans or Caucasians. In five out of his nine causes of action, Sherez specifically states that the defendants have discriminated against him because of his race or are involved in a racist conspiracy.[2] However, Sherez alleges no facts to support any of his racial discrimination claims. In fact, during the August 15, 2005 hearing, Sherez's counsel clearly and unequivocally admitted that he was neither alleging nor pursuing any racial discrimination claims.

Sherez also argues that the defendants' alleged refusal to hire him or to give him tutoring jobs constitutes IIED. In support of this claim, he alleges that he has suffered "public ridicule and embarrassment" because his colleagues know that he has the qualification and experience necessary to receive tutoring jobs but that he does not receive work because the defendants are retaliating against him.

## III. LEGAL STANDARD

Rule 12(c) allows parties to move for judgment on the pleadings prior to trial. Fed.R.Civ.P. 12(c). The court should grant a 12(c) motion if, accepting as true all material allegations contained in the non-moving party's pleadings, the moving party is entitled to judgment as a matter of law. *Hoeft v. Tucson Unified School Dist.*, 967 F.2d 1298, 1301 (9th Cir.1992). Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). However, if the district court goes beyond the pleadings to resolve an issue, the court must treat the motion as one for summary judgment. *Id.*

## IV. ANALYSIS

### A. The Eleventh Amendment and The State Defendants

The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any

---

**2.** Sherez makes the following unsupported allegations of racial discrimination: 1) Defendant Maeda engaged in "a pattern and practice of illegal promotional discrimination practiced against the qualified Caucasian teachers at Castle High School" (Count III, IIED claim); 2) the defendants engaged in "racial harassment" (Count IV, § 1981 claim); 3) "perpetration of the conspiracy by the Defendants to deny Robert Sherez, and other qualified non-Asian American teachers, his and their equal opportunity for fair employment" (Count V, § 1985 claim); 4) the defendants violated "the anti racist conspiracy act" (Count VI, § 1986 claim); the defendants engaged in "racial discrimination and harassment" (Count VII, § 1983 claim); 5) the defendants denied Sherez his constitutional rights "on the basis of his gender or race" (Count X, Title VII claim).

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Pursuant to the Eleventh Amendment, states cannot be sued in federal court, whether by their own citizens or citizens of another state. *Papasan v. Allain*, 478 U.S. 265, 275, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment also bars federal court actions against state agencies or instrumentalities. *Shaw v. State of Cal. Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir.1986). Similarly, a suit for damages against state officials, in their official capacity, constitutes a suit against the state itself and therefore is barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

States, state agencies, and state officials may, however, be held to answer in federal court in two limited circumstances: where the state waives its sovereign immunity, and where Congress expressly abrogates state sovereign immunity with respect to a particular federal cause of action. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1991) (noting that Eleventh Amendment immunity is waivable); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that Congress may abrogate Eleventh Amendment immunity in certain circumstances).

Courts have not been entirely consistent on what state acts will constitute a waiver of Eleventh Amendment immunity. This inconsistency stems from confusion as to whether the Eleventh Amendment is jurisdictional (i.e. whether an Eleventh Amendment defense may be raised at any time during a proceeding or whether a state must assert immunity as an affirmative defense in order to avoid waiver). *See, e.g., California Franchise Tax Bd. v. Jackson*, 184 F.3d 1046, 1048 (9th Cir.1999) ("Eleventh Amendment Sovereign Immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte."); *ITSI TV Prods. v. Agric. Associations*, 3 F.3d 1289, 1291–92 (9th Cir.1993) (treating the Eleventh Amendment as an affirmative defense). Regardless, state defendants have made a timely assertion of their Eleventh Amendment immunity.

The courts have been more consistent on the issue of Congressional abrogation of immunity. A federal statute providing a private cause of action does not subject states to suit in federal court unless the statute "explicitly and by clear language indicate[s] on its face an intent to sweep away the immunity of the States." *Quern*, 440 U.S. at 332, 99 S.Ct. 1139. Absent such a clear statement, courts should not read federal statutes to abrogate the states' immunity.

### 1. Federal Law Claims Against the State Defendants (Counts IV, V, VI, and VII)

■ Sherez's Complaint alleges that the state defendants are liable under 42 U.S.C. §§ 1981, 1985, 1986 and 1983 (Counts IV, V, VI, and VII). Sherez makes little effort to argue that the federal law claims against the state defendants are not barred by the Eleventh Amendment. Instead, Sherez argues that, in some circumstances, the Eleventh Amendment does not bar claims for prospective relief against state officials in their official capacity.

The court finds that Hawaii has not waived its Eleventh Amendment immunity, that none of the federal statutes abrogates Hawaii's immunity, and that the state de-

fendants share in the state's immunity. The Eleventh Amendment, therefore, bars the federal law claims against the DOE and against Gronna in her official capacity to the extent that Sherez is seeking damages. However, the court finds that, to the extent Sherez makes intelligible claims for prospective relief against Gronna in her official capacity, the Eleventh Amendment does not bar these claims.

As an initial matter, the State of Hawaii has not waived its immunity in this case, and the state defendants timely asserted their Eleventh Amendment immunity. Without Hawaii's consent, these claims cannot proceed unless the statutes pursuant to which Sherez sued override the states' Eleventh Amendment immunity.

None of these statutes abrogates the states' immunity. Section 1981 guarantees to all persons the equal right to "enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all law and proceeding[.]" Section 1983 imposes liability on state actors who deprive a person of his or her civil rights.[3] Section 1985 prohibits conspiracies to deny anyone his or her civil rights, and § 1986 creates a cause of action against anyone who fails to prevent such conspiracies. None of these statutes expressly abrogates states' immunity from suit in federal court and courts have consistently held that the Eleventh Amendment bars these suits against the states. *See* 42 U.S.C. §§ 1981, 1983, 1985, 1986; *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that § 1983 does not override a state's Eleventh Amendment immunity); *Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 972, 975 (9th Cir. 1994) (holding that the Eleventh Amend-

ment bars §§ 1983, 1985, and 1986 claims against the states); *Mitchell v. Los Angeles Cmty. College Dist.*, 861 F.2d 198, 201 (9th Cir.1988) (holding that the Los Angeles Community College District was entitled to Eleventh Amendment immunity from the plaintiff's §§ 1981, 1983, and 1985 claims).

Though Sherez did not name the State of Hawaii as a defendant in this case, the DOE, as a agency of the state, shares in the state's Eleventh Amendment immunity. *Office of Hawaiian Affairs v. Dept. of Educ.*, 951 F.Supp. 1484, 1492 (D.Haw. 1996) (holding that the DOE is a state agency entitled to Eleventh Amendment immunity). The Eleventh Amendment, therefore, bars Sherez's §§ 1981, 1983, 1985, and 1986 claims against the DOE, and also bars these claims against Gronna in her official capacity to the extent that Sherez seeks retrospective or compensatory damages. *Blaylock v. Schwinden*, 862 F.2d 1352, 1353 (9th Cir.1988) ("[A] suit against state officials that seeks retroactive money damages, to be paid from the state treasury, is barred by the eleventh amendment as a suit against the state."). Accordingly, the court grants the state defendants' Rule 12(c) motion for judgment on the pleadings as to Counts IV, V, VI, and VII against the DOE, and against Gronna in her official capacity for damages.

Though Sherez's prayer for relief is by no means clear, he appears to seek prospective relief in the form of a judicial declaration that the alleged discriminatory policy violates federal law and an injunction against enforcement of the policy in the hiring of teachers and tutors at Castle High School.[4] To the extent that Sherez's

---

**3.** The Supreme Court has held that neither a state agency nor a state official is a "person" under § 1983. *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 64, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The defen-

dants, therefore, are not subject to liability under § 1983 even absent their Eleventh Amendment immunity.

**4.** Sherez's Complaint consists of a baffling series of incoherent and contradictory asser-

Complaint and prayer for relief can be interpreted as requesting that the court enjoin Gronna from continuing to violate federal law, the Eleventh Amendment does not bar the action.

*Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), held that the Eleventh Amendment does not bar a suit to enjoin the unconstitutional actions of a state official. *Young* held that a state official who acts in violation of federal law, though sued in his or her official capacity, is "stripped of his official or representative character" because "the state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Id.* The Supreme Court has limited the *Young* exception to suits for prospective relief against ongoing violations of federal law. *Papasan,* 478 U.S. at 277–78, 106 S.Ct. 2932. Thus, relief that "serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment[.]" *Id.* at 278, 106 S.Ct. 2932 (citing *Milliken v. Bradley,* 433 U.S. 267, 289–90, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)). The Eleventh Amendment, therefore, does not bar Sherez's federal claims for prospective relief against Gronna in her official capacity.[5] The court, therefore, denies the state defendants' Rule 12(c) motion for judgment on the pleadings as to Counts IV, V, VI, and VII insofar as Sherez seeks prospective relief.

### 2. State Law Claims Against the State Defendants (Counts III and IX)

Sherez also asserts a claim against state defendants for IIED (Count III) and a claim for violation of Chapters 368 and 378 (Count IX). The state defendants argue that the Eleventh Amendment bars these claims. The court finds that the Eleventh Amendment bars Sherez's state law claims against both the DOE and Gronna in her official capacity, regardless of the relief sought.

■ As an initial matter, the state defendants argue that Hawaii has not consented to suit in federal court on Sherez's state law claims. Although Hawaii has waived its sovereign immunity as to some state tort and statutory claims, it has done so solely with respect to state court actions. HRS § 662–3 states that "the circuit courts of the State and ... the State district courts shall have original jurisdiction of all tort actions on claims against the state." HRS § 661–1 similarly grants the state courts jurisdiction over "[a]ll claims against the State founded upon any statute of the State[.]" Nothing in the language of these statutes suggests that Hawaii intended to subject itself to suit in federal court. Moreover, the Hawaii legislature has specifically declared that it intended §§ 662–3 and 661–1 to extend jurisdiction to state courts, but not to federal courts.

---

tions; trying to make sense of it is akin to walking through a house of mirrors. In fact, it is not at all clear whether Sherez even seeks prospective relief. Though he requests a declaratory judgment and an injunction, he directs his prayer for relief at "assignments denied him in 2003–04." To the extent that Sherez is seeking compensation for alleged violations of his civil rights that occurred in 2003–2004, the Eleventh Amendment bars the claim. *See Papasan,* 478 U.S. at 275, 106 S.Ct. 2932. However, in the interest of construing Sherez's complaint liberally and to do substantial justice, Fed.R.Civ.P. 8(f), the court

will interpret Sherez's complaint as requesting prospective relief in the form of a judicial declaration that the alleged policy violates federal law and an injunction against enforcement of the policy in the hiring of teachers and tutors at Castle High School.

5. Though state officials are not persons under § 1983, *Will v. Michigan Dept. of State Police,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304,, likewise acknowledges an exception allowing § 1983 actions to proceed against state officials sued for prospective relief.

*See* Act 135 of 1984 Session Laws of Hawaii. *See also Office of Hawaiian Affairs,* 951 F.Supp. at 1491 (discussing both plain language and legislative intent and holding that §§ 661–1 and 662–2, which waived the state's immunity for torts committed by its employees, do not waive the state's Eleventh Amendment immunity). The state defendants are therefore entitled to Eleventh Amendment immunity on these state claims.

■ Though Sherez appears to seek declaratory and injunctive relief with respect to his state law claims, there is no *Young* exception for suits based on state law against state officials. As the Supreme Court explained· in *Pennhurst,* courts engage in the fiction of allowing suits to proceed against state officials in their official capacities because Eleventh Amendment immunity must be reconciled with the constitutional command to maintain the supremacy of federal law. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 105, 104 S.Ct. 900, 79 L.E.2d. 67 (1984). It is this federalism concern that prompted·courts to allow suits for prospective relief based on federal law to proceed against state officials in federal court. However, when the allegedly illegal official conduct violates· state law only, the Supremacy Clause is not implicated; the Eleventh Amendment, therefore, acts as a complete bar to the suit, regardless of the remedy sought. *Id.* at 106, 104 S.Ct. 900. Accordingly, the court dismisses Counts III and IX against the state defendants.

### B. *Individual Capacity Claims*

#### 1. Title IX

■ Sherez sued defendant Gronna in her individual capacity on all nine counts of his Complaint, including his two claims based on Title IX. By its plain language and Supreme Court precedent, Titles IX is directed at institutional recipients of federal financial assistance and applies only to those grant recipients. *See* 20 U.S.C. 1681(a) (prohibits sex discrimination at "any education program or activity receiving Federal financial assistance"); *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 641, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) ("The government's enforcement power may only be exercised against the funding recipient."); *Nat'l Collegiate Athletic Ass'n v. Smith,* 525 U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999) (holding that the NCAA was not subject to suit under Title IX, despite the indirect benefit it received from federal education grants, because it was not a grant recipient). Further, courts have consistently concluded that Title IX does not subject school officials to liability in their individual capacities. *See, e.g., Soper v. Hoben,* 195 F.3d 845, 854 (6th Cir.1999); *Kinman v. Omaha Public School Dist.,* 171 F.3d 607 (8th Cir.1999); *Floyd v. Waiters,* 133 F.3d 786, 789 (11th Cir.), vacated and remanded, 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988); *Smith v. Metropolitan School Dist. Perry Township,* 128 F.3d 1014, 1019 (7th Cir. 1997). The court agrees; Gronna is not subject to liability in her individual capacity under Title IX, and therefore the court dismisses Counts I and II against Gronna in her individual capacity.

#### 2. Title VII

■ Sherez also seeks damages against Gronna in her individual capacity under Title VII. Title VII prohibits employers from engaging in discriminatory employment practices. *See* 42 U.S.C. § 2000e–2. Individual employees, including supervisors, are not liable as employers under Title VII. See *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583 (9th Cir.1993). Therefore, Gronna is not subject to liability in her individual capacity under Title VII, and the court therefore dismisses Count X against Gronna in her individual capacity.

### 3. Chapters 368 and 378

 Sherez also seeks damages against Gronna in her individual capacity pursuant to Chapters 368 and 378, though he does not specify the sections upon which he bases his claims.[6] Gronna argues that individual employees are not liable under the state employment discrimination statutes. She relies on *Mukaida v. Hawaii,* 159 F.Supp.2d 1211 (D.Haw.2001), an opinion by another judge in this district. There is no binding authority on the issue of individual liability under HRS § 378–2.[7] After considering the plain language of the statute, decisions of the Hawaii Supreme Court, and analogous federal precedent under Title VII, this court concludes that individuals are subject to liability under § 378–2 when they act as agents of an employer.

HRS § 378–2 provides that:

It shall be an unlawful discriminatory practice:

(1) Because of race [or] sex . . . :

(A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or on the terms, conditions, or privileges of employment; . . .

(2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden in this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part;

(3) For any person, whether an employee, employer, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]

Of prime significance, HRS § 378–1 defines an employer as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States."

HRS § 378–2 thus makes it unlawful for an "employer" to engage in certain acts of discrimination. HRS § 378–1 broadly defines "employer" as "any person . . . having one or more employees" and "including any agent of such person." Provided that a person employs one or more employees, the definition includes "any agent" of that person. A plain reading of the statute strongly suggests that an individual agent can be held liable as an employer for purposes of § 378–2.[8]

---

6. Chapter 368 creates the Hawaii Civil Rights Commission ("HCRC") but does not provide an individual cause of action in state or federal court. Sherez claims that he has exhausted his remedies in the HCRC. The court will address his claims under HRS § 378–2, which lays out specific causes of action for employment discrimination.

7. The court notes that there is a split among the judges in the District of Hawaii on this issue. *See White v. Pacific Media Group,* 322 F.Supp.2d 1101 (D.Haw.2004) (finding no individual liability); *Luzon v. Atlas Ins. Agency,* 284 F.Supp.2d 1261, 1265 (D.Haw.2003) (*Mukaida* judge finding no individual liability); *Black v. City & County of Honolulu,* 112

F.Supp.2d 1041, 1056–57 (D.Haw.2000) (imposing individual liability).

8. *Mukaida,* following Ninth Circuit Title VII precedent, concluded that the reference to an "agent" in the definition of "employer" was meant only to impose *respondeat superior* liability on employers for their agents' acts. *Mukaida,* 159 F.Supp.2d at 1227. However, if the Hawaii legislature intended to hold employers liable for the actions of their agents while immunizing the individual agents from liability, including agents of employers in the definition of employer would be a misleading and imprecise means of expressing that intent. This court prefers to assume the statute means what it says; the term "employer"

The court recognizes, however, that the § 378–1 definition of employer is not a model of clarity. It is helpful, therefore, to examine the definition of employer in the context of the entire chapter in order to better discern the legislative intent behind the use of the word "agent." Chapter 378 casts liability for employment discrimination broadly. It applies to the smallest employers, even individual employers who employ only one other person. In addition, subsection (3) imposes individual liability on those who aid, abet, or incite employment discrimination. Aider, and abettor liability extends to everyone, even those not employed or affiliated with the discriminatory employer. It is hard to imagine that the Hawaii legislature meant to impose liability on small employers and on individuals who aid and abet discrimination, yet at the same time meant to immunize the individual agents who actually engage in unlawful discrimination. Thus, taken in context, the language "any person. ... including .... any agent of such person" in the definition of employer contemplates that agents are individually liable as employers under the statute.

While the Hawaii Supreme Court has not definitively ruled on this issue of statutory interpretation, at least two cases indicate that it would likely read chapter 378 to hold individual employees liable; in both cases, the court appears to have assumed the statute imposes individual liability. *Steinberg v. Hoshijo*, 88 Hawai'i 10, 960 P.2d 1218 (1998), upheld a decision of the HCRC which held that a doctor violated § 378–2 when he subjected female employees to a hostile work environment at a clinic where all the parties were employed. Though the defendant did not raise the issue of his status as an employer, the court noted that "[t]he parties do not dispute that Dr. Steinberg was an agent of the Clinic and therefore an 'employer' as

defined by HRS § 378–1." *Steinberg*, 960 P.2d at 1226 n. 10. Although the specific issue was not raised, the court certainly could *sua sponte* have raised a jurisdictional defect in the proceedings.

*Schefke v. Reliable Collection Agency*, 96 Hawai'i 408, 32 P.3d 52 (2001), held that the lower court erred in entering a directed verdict in favor of the defendants in their individual capacities because a jury could have found the defendants individually liable for retaliation under HRS § 378–2. The defendants in *Schefke* were officers and partial owners of a corporation that allegedly discriminated against an employee. One of the defendants argued that, as a factual matter, he was not liable for the decision that adversely affected the plaintiff because he was not involved in making the discriminatory decision. The court nonetheless held that a jury could find him liable under HRS § 378–2(3) for inciting the discriminatory decision. Subsection (3) specifically subjects "any person, whether an employee, an employer, or not" to liability for aiding, abetting, or inciting unlawful discriminatory practices. The court then remanded the issue of both defendants' liability for retaliation to the lower court for a jury decision. The court clearly contemplated that the two defendants, both the inciter and the actual decision-maker, could be held individually liable. Thus the court again appears to assume that chapter 378 imposes liability on individuals.

When there is no Hawaii precedent directly on point, a federal district court may look to federal precedent construing Title VII for guidance in interpreting similar state anti-discrimination statutes. *See Furukawa v. Honolulu Zoological Soc'y*, 85 Hawai'i 7, 13, 936 P.2d 643, 649 (1997)

includes the agents of a person who employs one or more persons.

(noting that "federal courts have considerable experience in analyzing [employment discrimination] cases," however, federal precedent is "not necessarily persuasive, especially where a state's statutory provision differs in relevant detail"). As discussed above, individual employees are not subject to liability under Title VII which, like chapter 378, imposes liability on employers for employment discrimination. *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir.1993). *Miller* interpreted the agency language in the Title VII definition of "employer" as imposing *respondeat superior* liability on the employer for its agents' acts, while not imposing individual liability on the agent. However, Title VII differs from chapter 378 in relevant detail: federal law imposes liability only on employers with fifteen or more employees while chapter 378 imposes liability on employers with one or more employees. *Compare* HRS § 378–1 *with* 42 U.S.C. § 2000e–2.

*Miller* viewed the fifteen or more employee requirement in Title VII critical in determining Congressional intent with respect to individual liability. The court reasoned that "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.* In contrast, HRS § 378–1 does not limit employer liability to larger employers. Additionally, unlike Title VII, chapter 378 imposes aider and abetter liability on individuals. HRS § 378–2(3). As discussed above, construing "employer" to include individual agents of employers is entirely consistent with the statutory scheme of chapter 378. Because of these crucial differences between the levels liability imposed by Title VII and chapter 378, the court does not find Title VII precedent helpful in interpreting the HRS § 378–1 definition of employer.

The court concludes that, as its plain language suggests, chapter 378 imposes individual liability on agents of employers. The court therefore denies Gronna's motion for judgment on the pleadings as to Count IX of the complaint.

### 4. IIED

█ Sherez also claims that Gronna's alleged policy constituted IIED. Gronna argues that the court should dismiss this claim because Sherez has failed to allege the basic elements of IIED, namely he has failed to allege facts establishing that her conduct was outrageous or that it caused him extreme emotional distress. The court agrees that Sherez has failed to meet even the minimal pleading standard set by Rule 8(a)(2); the Complaint does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief" for IIED. The court therefore dismisses this claim against Gronna in her individual capacity.

Sherez alleges that Gronna implemented a policy that prohibited male teachers from tutoring female students. As a result of this policy, Sherez has allegedly received fewer tutoring assignments and has been denied employment as a special education teacher. He alleges that the policy "holds Plaintiff up for ridicule and embarrassment" because "his colleagues all know that Plaintiff has the qualifications and a lot of experience as a home school tutor."

The Hawaii Supreme Court has adopted the approach to IIED set out in the Restatement (Second) of Torts. In order to prevail on an IIED claim, a plaintiff must prove: "1) that the act allegedly causing the harm was intentional or reckless, 2)

that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." *Hac v. Univ. of Hawaii,* 102 Hawai'i 92, 106–7, 73 P.3d 46, 60–61 (2003). Sherez's IIED claim fails as a matter of law because he has not alleged that Gronna engaged in outrageous conduct or that her conduct caused him extreme emotional distress.

Taking Sherez's allegations to be true, Gronna established a general policy regarding tutoring assignments and this policy resulted in Sherez receiving fewer tutoring assignments, causing him embarrassment. First, implementing the alleged policy does not constitute objectively outrageous conduct. As Gronna points out, one could view the policy as an effort to protect female students as well as the reputation of male teachers. The policy applied to all teachers and did not single out Sherez for ridicule. In fact, any "public ridicule" or embarrassment he suffered must have been shared by all of the male tutors. Second, Sherez has not alleged that he suffered extreme emotional distress as a result of the policy. At most, he claims that he was embarrassed because he received fewer tutoring assignments than he did before the policy was implemented. This embarrassment does not constitute extreme emotional distress. The court, therefore, dismisses Count III against Gronna in her individual capacity.

## C. *Section 1981 Claim (Count IV)*

As discussed *supra,* the Eleventh Amendment does not bar Sherez's § 1981 claim against Gronna in her official capacity insofar as Sherez seeks prospective relief. Additionally, Sherez brings his § 1981 claim against Gronna in her individual capacity. However, § 1981 provides a cause of action *only* for racial discrimination. *See Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Pavon v. Swift Transp. Co.,* 192 F.3d 902, 908 (9th Cir. 1999).

Sherez has failed to allege any facts that would support a cause of action for discrimination based on race. More important, at the hearing on August 15, 2005, the court asked Sherez's counsel whether Sherez in fact intended to allege any claims for racial discrimination against any of the defendants. Sherez's counsel clearly stated that Sherez was alleging gender discrimination only and was not pursuing any claims for racial discrimination. The court therefore dismisses Sherez's § 1981 claim pursuant to Rule 12(b)(6) for failure to state a claim. *See Sparling v. Hoffman Const. Co. Inc.,* 864 F.2d 635, 638 (9th Cir.1988) ("A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim. The court must give notice of its intention to dismiss and give the plaintiff some opportunity to respond unless the plaintiffs cannot possibly win relief.") (Citations and internal quotations omitted); *Omar v. Sea–Land Serv., Inc.,* 813 F.2d 986, 991 (9th Cir.1987) ("A trial court may dismiss a claim *sua sponte* under Fed. R.Civ.P. 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief." (Citations omitted.)).

## V. CONCLUSION

The court grants the state defendants' motion for judgment on the pleadings as to the following claims: 1) IIED, 2) violation of § 1981, 3) violation of § 1983, 4) violation of § 1985, 5) violation of § 1986, and 6) violation of HRS Chapters 368 and 378

(Counts III, IV, V, VI, VII, and IX). The court denies the state defendants' motion for judgment on the pleadings as to Sherez's §§ 1983, 1985, and 1986 claims against Gronna in her official capacity to the extent that Sherez seeks prospective relief; the court dismisses Sherez's § 1981 claim (Count IV) entirely pursuant to Rule 12(b)(6) for failure to state a claim.

As for Gronna's motion for judgment on the pleadings on claims filed against her in her individual capacity, the court grants her motion as to Sherez's Title IX, Title VII, and IIED claims (Counts I, II, III, and X) and denies her motion as to Sherez's HRS § 378 claim (Count IX). As to the state defendants and Gronna in her individual capacity, the following of Sherez's claims survive this order: 1) Title IX claims against DOE and Gronna in her official capacity (Counts I and II); 2) Title VII claim against the DOE and Gronna in her official capacity (Count X); 3) §§ 1983, 1985, and 1986 claims against Gronna in her official capacity for prospective relief (Counts V, VI, and VII); 4) HRS Chapter 378 claim against Gronna in her individual capacity (Count IX), and 5) §§ 1983, 1985, and 1986 claims against Gronna in her individual capacity (Counts V, VI, and VII).

IT IS SO ORDERED.